GEORGE C. NIGHTINGALE *v.* HARRIS & LIPPITT & another.

An assignment by an insolvent debtor in trust for the benefit of his creditors with prefer-
ences to certain creditors on condition that they will release the assignor within a reason-
able time limited in the assignment, is a valid trust in Rhode Island; and the rights of
the creditors, as *cestuis que trust* under it, will be protected in equity against sale, under
an execution against the assignor levied upon the assigned property subsequently to the
assignment.

Such an assignment is not invalidated by the fact that it does not purport to convey all
the assignor's property, if in truth it does convey all his property, except what is ex-
cepted by law from attachment.

Nor is it invalidated by the fact that it prefers certain creditors by giving one class thirty
per cent., and another fifteen per cent. only on their claims, out of the assigned prop-
erty, turning the balance over to the general creditors of the assignor, where it is plain,
from the relative value of the property and the amount of the debts embraced by the
assignment, that the assignor could not have designed or expected that any interest out
of the assigned property would result to himself.

Nor is it to be held fraudulent and void under the statute of Rhode Island against fraudu-
lent conveyances, merely because it appropriates in payment to creditors who have,
under a former assignment shortly before released the assignor, without payment or
upon partial payment, placing them upon an equality with non-releasing creditors; al-
though the court will instruct the assignor to pay nothing out of the assigned fund upon
the released claims.

BILL IN EQUITY by an assignee of an insolvent debtor under
a voluntary assignment, to enjoin the sale of a portion of the
assigned property under an execution levied upon it by certain
creditors of the assignor, and for instructions.

At the hearing of a motion for a special injunction of the
sale, which, as there were no facts in contest, it was agreed
should be a final hearing, it appeared, that on the 30th day of
September, 1858, Zachariah Allen, of Providence, a large cot-
ton manufacturer, assigned to the plaintiff and William M.
Bailey all his estate, real and personal, in trust, for the benefit
of his creditors, and that the assignment, after providing in full
for certain claims for labor, and debts contracted by the assignor
after he has stopped payment and whilst negotiating for an ex-
tension and before he made his assignment, divided, without
specifying the amounts, the debts of the assignor into three
classes, with preferences in that order, and with condition, so
far as the holders of the first two classes of debts were con-
cerned, that in order that they should be entitled to such prefer-

ences, they should, on or before the 31st day of December next succeeding, release under seal their claims against the assignor; no release being required from the third or unpreferred class of creditors. It appeared from the affidavit of the plaintiff, that the total amount of the debts of the assignor exclusive of those secured by mortgage and other pledge of property, was about $425,000; and that $255,680 of this amount of debts was included in the first class of the assignment; that he and his co-assignee Bailey had sold the most valuable portion of the assigned estate and had paid fifteen per cent. upon their claims, amounting to $31,415.16, to the creditors of the first class, who had availed themselves, by releasing, of their preference under the assignment, and that the balance of the assigned property would give to that class of creditors about as much more, leaving nothing to come to creditors of the second class. It further appeared that, on the 19th day of August, 1859, Zachariah Allen, by the death of his sister, Ann Allen, intestate, became entitled to one undivided fifth part of her estate, real and personal, the whole being valued by the assessors of taxes at $81,470, which valuation, according to the affidavit of the plaintiff, was more than the estate, when sold, would probably realize. On the same day, and immediately after the death of his sister, Zachariah Allen made another assignment to the plaintiff, embracing all his right, title, and interest, as one of her heirs at law and next of kin, in the estate of his said sister, which, after the usual clause providing for the sale of the assigned property and the payment of the expenses of the trust, ordered the plaintiff, as assignee, to appropriate the residue of the proceeds of sale to the payment of the following classes of debts, in the order and manner, and on the conditions thereinafter specified, to wit:—

" CLASS I. First, to the payment of thirty (30) *per cent.* on all just and liquidated debts (except judgments on other claims than those evidenced by notes or other negotiable paper) due from me at the date of, and which were embraced, described, and provided for under Class I. of the general assignment made by me the 30th of September, 1858, to George C. Nightingale and Wm. M. Bailey, Esqrs., in trust, and duly recorded;

and which have not been released under the provisions of said assignment. And to the payment of fifteen (15) *per cent.* to the holders, on the full amount of all notes made by me, which are entitled to, or have received, a dividend from the assigned estate of any other person or firm, whether such assignment were voluntary or otherwise, or which represent a debt that is entitled to, or has received a dividend as aforesaid, and which shall not draw any dividend, though released, under the provisions of said general assignment; and on any judgment debt not hereinbefore provided for.

" The classes of claims above specified, to stand on the same footing, as to their right to receive the several *per centages* provided for them respectively, notwithstanding the order in which they are named.

" Class II. It is hereby further provided, that after making all the payments in this instrument, before provided for, the residue of said proceeds shall be applied to the payment in full, if sufficient, otherwise, ratably, of all other just debts and liabilities of whatever nature, due from me at the date of, and described, embraced and provided for under Class II. of the said general assignment of 30th of September, 1858, notwithstanding any release of the same or any portion of them, under the provisions thereof; always excepting, however, claims specially secured by pledge of negotiable paper, on which I am not personally liable.

" *Provided, nevertheless*, that all and singular the provisions for the payment of claims under Class I. and Class II. respectively, in this instrument before contained, are made upon the express conditions following, viz. :

" That the holder or holders of any such claims against me as are specified in Class I. of this instrument, do and shall, on or before the expiration of *four* months from the date hereof, and the holder or holders of any such claims as are specified in Class II. of this instrument, do and shall, on or before the expiration of six months from the date hereof, (except as to such claims as have been heretofore released,) respectively come in under this assignment, and as to such claims accept the terms thereof, and in consideration of the provisions for pay-

ment to be received therefrom, shall respectively, — the holders of said Class I. claims, on or before the expiration of four months, and the holders of said Class II. claims, on or before the expiration of six months from the date hereof, — execute and deliver to me, the said assignor, a release under seal, of their several claims against me.

" CLASS III. And it is lastly hereby provided, that after making the payments hereinbefore provided for, the residue of said proceeds shall be applied to the payment of all other debts due and owing from me.

" And I hereby authorize and empower my said assignee to settle, compromise and adjust all claims and matters arising under this assignment, by arbitration or otherwise, as he may deem best for all interested therein."

This assignment, which was acknowledged and lodged for record, on the day of its date, August 19, 1859, conveyed, according to the affidavit of Zachariah Allen, all his property at the time of its execution except what was exempted from attachment by law. By the affidavit of the plaintiff the amount of debts embraced in the 30 per cent. clause of the first class, was $44,188.17 — and the whole amount of debts embraced in the 15 per cent. clause was $21,720.06, the two percentages when added, $13,256.70 + $3,258 = $16,514.70, which exhausted, if all the creditors in the first class came in under the assignment, the whole probable value of the assigned property, leaving nothing to pass to the creditors of the second class.

The defendants, Messrs. Harris & Lippitt, who were execution creditors of the assignor, Zachariah Allen, in the sum of $5,512.80, debt and costs, on the 20th day of August, 1859, levied their execution upon the assignor's interest in the real estate embraced in the assignment, and the same was advertised to be sold by the sheriff under the levy on the 28th day of November, 1859. The plaintiff, the sole assignee of Zachariah Allen, under his last assignment, thereupon filed this bill perpetually to stay the sheriff's sale, and for instructions in the execution of his trust; and now moved for a special injunction of the sale until the hearing of the bill and further order of the court.

*W. H. Potter*, for the complainant.

1. There is nothing on the face of this assignment, which, in Rhode Island, will make it void. Such instruments are not here taken separately from the extrinsic facts, and with these, the preferences by percentages were made for the purpose only of a more equitable distribution of the assignor's property amongst his creditors.

2. As to the provision for released debts, Class No. I. in the assignment, which includes only debts released under the first assignment which have received no dividend, will swallow up the whole assigned property, if the creditors in that class should execute a release within the time prescribed.

Such a provision does not avoid the whole assignment, as a preference of a fictitious debt or a reservation of property for the benefit of the assignor or his family might do, but the court deciding that the application in favor of released debts is void, the property might in consistency with the assignment go to satisfy the existing debts of the assignor.

The preference is not of a fictitious debt, but of debts unpaid, though released. The moral obligation remains as before; and if the provision in the assignment to pay does not revive the legal right to enforce them, as in the case of a debt discharged by proceedings in bankruptcy, or barred by the statute of limitations, or of a note from which, for want of due notice, an indorser is discharged, all of which are revived by promises to pay, at least the assignment is not void for fraud, inasmuch as in this respect it does not attempt to appropriate the property to any but an honest purpose.

If the assignment is to be avoided for this cause, why not, if it should turn out that it embraced claims which were supposed by the assignor to be debts, but which it was decided, after contest, were not such. The case of *Curtis et al.* v. *Leavitt,* 1 Smith (N. Y.) R. 9, shows the modern doctrine in equity to be that nothing avoids a conveyance but actual fraud.

*Bradley*, with whom was *T. A. Jenckes*, for the respondents.

1. It is not according to the usage of courts of equity in this state to enjoin a sale under an execution because of any alleged

defects in the right of the creditor to offer the property for sale under the levy.

2. The assignment is void because it does not purport to assign all the debtor's property, or to give all that is assigned to the creditors, but only enough to pay certain percentages, and yet requires a release in full of the debts. *Jacob* v. *Corbitt*, 1 Cheves, Ch. Rep. 72; 1 Am. Leading Cases, 71, and cases cited; *Stewart* v. *Spencer*, 1 Curtis, 165; *Spencer & Pierce* v. *Jackson*, 2 R. I. 35. The cases in 2 Rhode Island, and 1 Curtis, consider an assignment of part of a debtor's property requiring a release as extreme and doubtful. This assignment adds a most objectionable feature, limiting the right, even of judgment creditors, to the receipt of 15 per cent. of their claim.

3. The assignment allows those who are not creditors to share the estate with those who are, and on more favorable terms. This makes an assignment fraudulent on the face of the deed and void. See 1 Am. L. Cases, 69; 2 Kent, 732; *Durfee's case*, 5 R. I. Rep. 401; *Halsey* v. *Whitney*, 4 Mason, 230; *Hyslop* v. *Clarke*, 14 Johns. 458; *Harris* v. *Sumner*, 2 Pick. 129; *Fiedler* v. *Day*, 2 Sand. S. C. Rep. 594; *Webb* v. *Dagget*, 2 Barb. Sup. Ct. R. 9; *Planck* v. *Schermerhorn*, 3 Barb. Ch. 644; *Wakeman* v. *Grover*, 4 Paige, 23; *Rogers* v. *De Forest*, 7 Ib. 272; *Mackie* v. *Cairns*, 5 Cowen, 547; *Goodrich* v. *Downs*, 6 Hill, 438; *McClurg* v. *Lecky*, 3 Penn. 83; *Snow* v. *Keene*, 3 Wharton, 347; *Passmore* v. *Eldred*, 12 Serg. & Rawle, 198; 1 Rawle, 163; 2 Penn. 92; 7 Watts & Serg. 219; *Albert* v. *Winn*, 7 Gill, 446.

4. The statement by the assignee, if proved, would not change the character of the assignment; for upon its own showing, all the creditors of the 1st class must release, or the illegal provisions of assignment in the 2d class come into play. None have yet released, though the time has nearly expired under the 30 per cent. and the 15 per cent. provision. Those creditors might have taken 30 per cent. under the first assignment, and declined it. The presumption is, that most if not all will decline it. *But the character of an assignment containing illegal provisions upon its face is not saved by parol evidence that possibly or probably those provisions will become in-*

*effectual.* *Boardman* v. *Halliday,* 10 Paige, 230. This was the case of an assignment preferring certain claims, no release being required; and that the surplus should be distributed in the assignees' discretion. The property was not sufficient to pay the preferred creditors ; *Held,* that the assignment was void because of the discretionary clause. The court say, " The fact stated in the answer, that the assignees have ascertained that the assigned property will not be sufficient to pay the creditors whom the assignor has himself preferred, cannot change the character of the assignment. For when the assignment was made, the fact that the property would not be sufficient to pay the preferred creditors was not ascertained, and probably was not supposed to exist. And the assignment itself shows that the assignor contemplated the possibility of there being more than enough to pay all his debts, as it contains an express provision for the payment of the surplus to him in that event. The failure to realize as much from the assigned property as was originally anticipated, cannot, therefore, render an assignment valid which was void at the time when it was executed." In *Mead* v. *Phillips,* 1 Sanford Ch. 83, there was a provision to pay expenses for suits that might be thereafter brought. None had been. To the argument in support of the assignment from this contingency the court say, (p. 87,) " It is no answer to the argument, that the power is contingent, and that no occasion has arisen for its operation. The same was said of the coercive clause in *Wakeman* v. *Grover,* 4 Paige, 23, and 11 Wend. 187. The question is, What does it enable the debtor to accomplish ? and the law presumes that he intended all that the instrument provides. I cannot resist the inference of a fraudulent intent on the part of Phillips in this provision of the assignment." In *Wakeman* v. *Grover,* 4 Paige, 42, one of the provisions was, that the assignees might compound with the creditors. This is the most objectionable feature of an assignment, " illegal and void on its face." And the chancellor says, (p. 42,) " I do not believe that the respectable gentlemen who are named as assignees in this case would allow themselves to use the power conferred on them in this way. But it might be used in that way by friendly assignees named by the debtor. It is therefore

to the principle of such a provision that I must enter my dissent. If it can be sanctioned in this case, it would be equally valid in an assignment to a trustee who would not be restrained from exercising his power by any very nice scruples on the subject."

AMES, C. J.    An assignment by an insolvent debtor in trust for the benefit of his creditors, with preferences upon condition of a release, has always been regarded in Rhode Island as a valid and subsisting trust; and by statutory enactment, long in force, this court has been vested with summary powers, which for years past it has frequently exercised, to guard and enforce the rights of the creditors, as *cestuis que trust* under such a conveyance. Rev. Stats. ch. 164, §§ 12–17. We cannot, therefore, doubt our general power and duty as a court of equity, to enjoin those who without right seek to harass or obstruct a trustee in the performance of his duties under such a trust as this, or, by sale of the trust property upon an execution unlawfully levied upon it, to cast a cloud upon the trustee's title, and embarrass the creditors in electing whether they will, within the time reasonably appointed by the assignor, come in under and accept the terms of the trust. Our jurisdiction in this respect is as clear as, upon the proper call of the assignee, to construe the trust deed, and instruct him in the performance of his duties by virtue of it.

In answer to the assignee's claim for protection in this case, it is, however, objected, that this assignment is void: —

*First,* because, although it does not upon its face purport to convey all the assignor's property, but only certain property to which he recently succeeded upon the death of one of his sisters, it gives, by way of preference, to the first two classes of creditors as they are arranged in the instrument, certain percentages only upon their debts, upon condition of a release in full, leaving the surplus, if any, to go to the assignor's non-releasing creditors; and,

*Second,* because it prefers, by way of a percentage, certain former creditors of the assignor, who have already released him in consideration of a right of dividend under his first general assignment.

It is said that for these causes this assignment is rendered void by our statute against fraudulent conveyances, which, amongst other things, enacts, that every conveyance of lands or chattels " had, or made, or contrived of fraud, covin, collusion, or guile, to the intent or purpose to delay, or hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, or just demands of what nature soever," shall be deemed and taken, " as against said person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every of them, whose debts, suits, demands, &c., by such guileful and covinous devices and practices as aforesaid, shall or might be in any wise injured, disturbed, hindered, delayed, or defrauded, *to be clearly and utterly void;* any pretence, color, feigned consideration, expressing of use, or any other matter or thing, to the contrary notwithstanding." Rev. Stats. ch. 259, § 1 ; Supplement to Rev. Stats. of 1857.

Without doubt, an assignment for the benefit of creditors may contain a clause so plainly indicative of the fraudulent intent pointed at by this statute, as to carry its death-wound upon its face; such as a gratuitous provision out of the assigned property for the insolvent assignor or his family.   Except, however, in such glaring cases, incapable of any just or honest explanation, we should be departing far from the usage of well-instructed courts of any sort, and especially of courts of equity, if we should attempt to pronounce upon the intent of the maker of any instrument without the aid of all those facts relating to the subjects and objects of his conveyance, which, by placing us in the precise point of view from which he contemplated his act, will enable us to ascertain what he intended by the language he used, and, consistently with that language, why he intended it.

It certainly is not honest for a debtor to endeavor to extort from his creditors a full release, upon a partial cession of his property ; especially when, as in the case of *Stewart et al.* v. *Spencer et al.* 1 Curtis, C. C. R. 157, referred to in the argument, he secretly runs away with the most available portion of his assets, and leaves an assignment behind him of the balance only of his property, stipulating for a release, as the means by

which he may secure himself in the enjoyment of his dishonest reservation. But once grant that the policy of the law admits, as ours does, that an insolvent debtor may provide in his assignment that his creditors shall release him in order to take any benefit under it, and we apprehend that the fact that the assignment does not purport, upon its face, to convey all his property, is rather a badge of fraud than conclusive evidence of it; and that if it shall be shown by proof, as it may be consistently with the deed, and as, in this case, it is, that in truth the assignment does convey all the debtor's property, this badge of fraud will be completely torn off, and the case stand before us precisely as if the assignor had made the strongest professions in his deed, that the assigned property was all that he had. On the other hand, however strong might be his professions in this respect, if the fact was, that whilst concealing a substantial portion of his property, he was exacting by his assignment a full discharge of his partially paid debts, it would more clearly condemn him, from its very inconsistency with what he avowed.

The same line of remark applies to the other branch of the first objection to this assignment: that it gives to the first two classes of creditors under it but thirty and fifteen per cent. respectively upon their claims, and the balance of the proceeds of the assigned property over to the non-releasing creditors; so that, for aught that the court can know from the assignment, a large amount of property may result to the assignor from his obtaining releases in full from the first two classes of his creditors upon partial payment only. It is certain that the court can rarely, if ever, know from the assignment itself the value of the assigned property, or the amount of the debts in each class, or in whole; and so, what percentage on their claims the different classes of creditors, as they are arranged under it, will receive, and whether there will be anything after satisfying the trust, to result to the creator of it. But it can know all this from proof; and is bound thus to ascertain it before coming to the conclusion that the assignor designed to make, or has made, a conveyance, which may force any of his creditors to release him upon condition of receiving a por-

tion only of their debts, when the assigned property is sufficient to pay them in full. It would be strange indeed, if a court of equity should insist upon arriving at a conclusion so unfavorable to the design or effect of a trust presented for its protection, upon surmise only, when, consistently with the rules of evidence, it could have, and in fact easily obtain, proof of the relative amount of the property and debts, and thereby ascertain the probable design of the assignor by knowing the precise application which through his assignment he has made of his property.

Such proof, in the shape of affidavits, is now before us; and places it beyond doubt that so far from there being anything out of the assigned property to result to the assignor, after paying the percentages provided for the creditors in the first class and the other debts of the assignor, not a dollar will probably reach even the creditors in the second class; leaving debts of the assignor to the amount of about $154,000 to intervene between him and any such resulting interest as has been imagined for the sake of the argument. In such a state of facts it may be seen at once how improbable it is, that the assignor, by ordering the first class of claims to be paid in part only out of the assigned estate, designed thereby that any benefit should result to himself. The truth is, that this provision amounts, and was intended to amount, to a distribution of the assigned property, in certain proportions, between the creditors whose claims were arranged in the first class; the balance being turned over to the creditors of the second class and to the general creditors of the assignor, to prevent the possibility that any interest in the assigned estate should result to him.

The *second* and last general objection to the validity of this assignment, that it prefers over the general creditors of the assignor, certain creditors who have already released him for the chance of dividend under his first and general assignment, remains to be considered. This provision, which, as we see from the accompanying affidavits, can practically operate only in favor of releasing creditors who have received for their releases no dividend under the first assignment, is conceived in the spirit of moral justice; and had the assignor been dealing

with property which was beneficially his own, does no more for the wholly unpaid or even partially paid creditors of this class, than, as a matter of general equity, ought to have been done.   The fact of a release of debts under such circumstances does not discharge their moral obligation ; and every honest man feels, that, in case of future acquisitions by the debtor, releasing creditors, so far as they are unpaid, ought to be placed by him, if he has the power, upon the same footing with those who have retained the power to enforce against him their claims.   We are clear, however, that a right of preference can be exercised by an insolvent debtor only between valid, subsisting debts ; and does not extend to those which have been discharged by act of party, as in this case, no matter how harsh, in general justice, the consequences may be.   A mere moral obligation is not sufficient, as the consideration of a promise, to enable it to be legally enforced against the promisor himself ; and still less to place such a promise, or an application of property in favor of such an obligation, upon an equal footing with claims against the person promising or applying which have the sanction of law.

Is, however, such an undisguised attempt in an assignment to do general justice between his releasing and non-releasing creditors, so " had or contrived of fraud, covin, collusion, and guile, to the intent or purpose to delay, or hinder, or defraud creditors of their just and lawful actions, suits, debts," &c., as by bringing it within the range of our statute against fraudulent conveyances, renders the assignment, " clearly and utterly void ? "   It is likened in this respect to preferences of fictitious debts, — to reservations of property in favor of the assignor or his family, which have been adjudged, as indicative of a fraudulent design upon the rights of creditors, to have such an effect. No precedent can be found, however, which has applied the harsh and sweeping remedy of the statute to such a case as this ; and our common sense recognizes a plain distinction between honest things which one may be incompetent to do, and dishonest things which no one ought to do, — between a secret, or even an open, attempt of a debtor to deprive his creditors of what is justly theirs in favor of himself or his, and

Nightingale *v.* Harris & Lippitt & another.

an effort on his part in applying all his property to their benefit, to endeavor to do general equity between them, by placing those who have released him in the hope of payment, and are unpaid, upon the same footing with those who have neither released nor been paid.

At the argument it was urged upon us as decided, that any attempt whatsoever on the part of an insolvent assignor, though made without disguise in his assignment, to apply a portion of his property to the benefit *of others,* no matter whom, so that they were not in a legal sense his creditors, made the whole assignment fraudulent and void. Without doubt, general expressions may be found in some of the cases which will bear this construction, if, as we have no right to do, we divorce the phrases of a judge from the connection in which he uses them, and do not, according to the received rule, limit their meaning by the state of facts of which he is speaking. Such phrases are quite satisfied by applying them to reservations of property for the benefit of the assignor, or of his family, or of some mere volunteer to whom in no sense could he suppose himself indebted, without pressing them so far as to embrace cases of open and honest excess of power in adjusting the relative claims of those who were the assignor's creditors when he first went into insolvency. But if this were otherwise, the astuteness of judges of other states to find fraud in, and avoid, because contrary to the general policy of their law, assignments with preferences made by insolvent debtors, would furnish no guide to us, when the policy of our law sanctions and upholds such instruments. Our statute of fraudulent conveyances was plainly designed, looking at the terms which it uses, to apply only to cases of actual covin and deceit, and not to that large class of constructive frauds with which, as a court of equity, we may deal in a very different manner from that which the statute, when it applies, permits us to do. The root and branch work which the statute makes, in the former class of cases, differs very materially from the pruning and paring process of equity, in the latter. If other courts choose to ignore this distinction, or so to construe their statutes of fraudulent conveyances as to bring within them cases of constructive as

well as of actual fraud, we nevertheless feel at perfect liberty to recognize it, and construe our statute according to the obvious intent of the legislature. There is a wide difference between an honest excess of power and fraud, which no casuistry can confound. The clauses of an instrument which are impotent, for the former reason, may, if fairly separable from the rest, be cut out as dead, and the living parts be left in undiminished vigor; but fraud, in any part, taints and corrupts the whole conveyance, and by force of the statute renders it "clearly and utterly void."

We do not regard the objectionable feature in this assignment, which we are considering, as indicating that the instrument, or any part of it, was contrived of fraud, covin, collusion, or guile, to defeat or hinder the creditors of the assignor in the collection of their debts, but, rather, as indicating an honest but unwarranted design on the part of the assignor, to apply a portion of his new succession towards his debts of moral obligation, along with, and as if they were debts also of legal obligation. We will not be the first to bring such a case within the range of the statute against fraudulent conveyances; but whilst we hold the application to be void for want of power in the assignor to make it, shall hold the assignment, which in other respects is accordant with the policy of our law, to be valid, as free from all taint or suspicion of "covin, collusion, or guile."

The result is, that we grant the motion that the defendants be restrained from further prosecuting their levy upon the trust property, and instruct the assignee to apply no portion of the trust funds to the payment of claims which have been released by act of the claimants.

*Decree accordingly.*